UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRENDA J. SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521,<br><br>    Defendant. | Case No. 16-CV-02547-LHK<br><br>**ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 10, 15 |

Plaintiff Brenda Smith ("Plaintiff") brings this putative class action against Service Employees International Union, Local 521 ("Defendant"). Before the Court are Defendant's motion to dismiss the complaint and Plaintiff's motion to remand this action to Santa Clara County Superior Court. ECF No. 10 ("MTD"); ECF No. 15 ("MTR"). The Court finds these motions suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and thus VACATES the motions hearings set for August 18, 2016, at 1:30 p.m. and September 1, 2016, at 1:30 p.m.[1] Having considered the submissions of the parties, the relevant law, and the record in

---

[1] Plaintiff has also filed a motion requesting that these hearing dates be consolidated to a single hearing date. ECF No. 21. Because this Order disposes of both motions in advance of their respective hearings, Plaintiff's administrative motion is DENIED AS MOOT.

1
Case No. 16-CV-02547-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS

this case, the Court GRANTS Plaintiff's motion to remand and DENIES Defendant's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

From 2011 to 2015, Plaintiff worked for Defendant as a union organizer. ECF No. 1-1 ("Compl.") ¶ 7. Plaintiff was also a member of Local 9423 of the Communication Workers of America ("CWA"), a union which had a collective bargaining agreement with Defendant. While working for Defendant, Plaintiff was classified as an exempt employee, which means that she was not paid overtime or given legally-mandated rest breaks. Plaintiff alleges, however, that she and other union organizers were primarily engaged in non-exempt work, and were thus incorrectly classified as exempt employees. *Id.* ¶ 16. Plaintiff brings this putative class action on behalf of herself and all other union organizers who worked for Defendant over the past four years. *Id.* ¶ 1.

### B. Procedural History

On February 19, 2016, Plaintiff brought suit in Santa Clara County Superior Court. Plaintiff's complaint contained nine causes of action, all asserted under California law. On May 11, 2016, Defendant removed the instant action to federal court. In Defendant's notice of removal, Defendant asserted that all nine of Plaintiff's causes of action were completely preempted by § 301 of the Labor Management Relations Act. ECF No. 1 at 2.

On May 18, 2016, Defendant moved to dismiss Plaintiff's complaint. ECF No. 10. Plaintiff filed a response on June 1, 2016, ECF No. 14 ("MTD Opp'n"), and Defendant filed a reply on June 8, 2016, ECF No. 17 ("MTD Reply").

On June 8, 2016, Plaintiff moved to remand the instant action to state court. ECF No. 15. Defendant filed a response on June 22, 2016, ECF No. 18 ("MTR Opp'n"), and Plaintiff filed a reply on June 29, 2016, ECF No. 20 ("MTR Reply").

## II. LEGAL STANDARD

### A. Motion to Remand

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case in the first instance. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c). A notice of removal must contain a "short and plain statement of the grounds for removal," a requirement that tracks the general pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. *Id.* at 553 (citing 28 U.S.C. § 1446(a)). The defendant bears the burden of establishing removal jurisdiction. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

**B. Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### C. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

### A. § 301 of the Labor Management Relations Act

Under § 301 of the Labor Management Relations Act, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any [federal] district court . . . , without respect to the amount in controversy [and] without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "In enacting Section 301, Congress intended that the rights and duties created through [a] collective-bargaining [agreement], involving as they do the collective strength of the unionized workers and their employer, should ordinarily trump [state] common law remedies." *Dent v. Nat. Football League*, 2014 WL 7205048, *2 (N.D. Cal. Dec. 17, 2014).

"In a series of opinions, the [U.S.] Supreme Court has concluded that § 301 . . . require[s] the 'complete preemption' of state law claims brought to enforce collective bargaining agreements." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000); *see also id.* ("The pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such

4

suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.") (internal quotation marks omitted).

The Ninth Circuit has established a two-part test to determine whether § 301 preemption applies. First, the court must examine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Second, if the state "right exists independently of the" collective bargaining agreement, the court "must still consider whether [the right] is nevertheless substantially dependent on [an] analysis of [the] collective-bargaining agreement." *Id.* (internal quotation marks omitted).

The parties agree that Plaintiff's causes of action, which are based on California law, involve rights conferred upon Plaintiff by state law and not by the collective bargaining agreement. Consequently, the instant motions rise and fall according to the second part of the § 301 analysis: whether Plaintiff's causes of action are substantially dependent on an analysis of the terms of the collective bargaining agreement between Defendant and CWA. If, as Plaintiff contends, Plaintiff's causes of action are not substantially dependent upon an analysis of the collective bargaining agreement, then "[r]emoval to federal court was improper," and there is no basis for federal jurisdiction. MTR at 1. On the other hand, if Plaintiff's causes of action are substantially dependent upon such an analysis, then Plaintiff's causes of action are completely preempted under § 301.

### 1. "Substantially Dependent"

#### a. Legal Framework

"[T]o determine whether a state law right is 'substantially dependent' on the terms of a" collective bargaining agreement, courts must decide whether the claim can be resolved by "looking to" or "interpreting" the collective bargaining agreement. *Burnside*, 491 F.3d at 1060 (alteration omitted). If a state cause of action requires the court to do no more than "look to" the collective bargaining agreement, then the cause of action is not preempted. On the other hand, if the court must "interpret" the collective bargaining agreement, then the cause of action is

5

preempted.

"Although the look to/interpret distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others." *Id.* (internal quotation marks and citation omitted). For example, looking to the collective bargaining agreement to "discern" whether any "of its terms [are] reasonably in dispute" is not "enough to warrant preemption." *Id.* In addition, "alleging a hypothetical connection between [a cause of action] and the terms of the [collective bargaining agreement] is not enough to preempt the claim." *Id.*

On the other hand, § 301 preemption applies if the cause of action "necessarily requires the court to interpret an existing provision of [the collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001).

**b. Application**

As a general rule, California law requires that all employees be paid overtime for any work in excess of forty hours per week. *See* Cal. Labor Code § 510. Cal. Labor Code § 515(a), however, states that the "Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid . . . for executive, administrative, and professional employees." Cal. Labor Code § 515(a).

Pursuant to Cal. Labor Code § 515(a), the Industrial Welfare Commission issued 8 C.C.R. § 11040, a wage order which defines the type of work that falls within the executive, administrative, and professional exemptions. This wage order states, for example, that an employee falls under these exemptions if the employee "customarily and regularly exercises discretion and independent judgment" and "earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." 8 C.C.R. § 11040.

The wage order further specifies various other requirements to determine whether "an employee's duties meet the test to qualify for an exemption." These requirements are comprehensive. With respect to the executive exemption, for instance, the employee must have "responsibilities [that] involve the management of the enterprise in which he/she is employed." 8

C.C.R. § 11040(1)(A)(1)(a). The employee must also have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight." 8 C.C.R. § 11040(1)(A)(1)(c).

With respect to the administrative exemption, the employee must perform "office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers" or be part of "the administration of a school system[] or educational establishment or institution." 8 C.C.R. § 11040(1)(A)(2)(a). (a). The employee must also "regularly and directly assist[] a propriety, or an employee employed in a bona fide executive or administrative capacity" *or* "perform[] under only general supervision work along specialized or technical lines" *or* "execute[] under only general supervision special assignments and tasks." 8 C.C.R. § 11040(1)(A)(2)(b)—(e).

To fall within the professional exemption, an employee must either be licensed or certified by the State of California or "primarily engaged in an occupation commonly recognized as a learned or artistic profession." 8 C.C.R. § 11040(1)(A)(3)(a) & (b). Work may be sufficiently professional if it "is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work)." *Id.*

For all three of these exemptions, a court must examine "[t]he work actually performed by the employee" with "the employer's realistic expectations and the realistic requirements of the job." 8 C.C.R. § 11040(1)(A). The "employer bears the burden of demonstrating that an employee is exempt from the Labor Code's overtime requirements." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

With the foregoing framework in mind, the Court turns to the crux of Plaintiff's complaint: whether Plaintiff, as a union organizer, was mischaracterized as an exempt employee because Plaintiff performed primarily non-exempt work. Defendant contends that Plaintiff falls within either the professional or administrative exemption.

As discussed above, "exempt" and "non-exempt" work are legal terms of art which are

defined in the California Labor Code and in the Industrial Welfare Commission's wage order. Thus, in order to determine whether Plaintiff performed exempt or non-exempt work, a court would need to undertake a two-step analysis.

First, a court would have to evaluate what sort of work Plaintiff actually performed and the realistic requirements of the union organizer position, which a court might do by considering deposition testimony, work logs, and other relevant evidence. Next, using these facts, a court would need to determine whether, applying the standards set forth in the California Labor Code and the Industrial Wage Commission's wage order, Plaintiff performed primarily exempt or non-exempt work. Neither step of this analysis requires the court to interpret Plaintiff's collective bargaining agreement. Section 301 preemption, therefore, does not apply.

This conclusion is well-supported by legal precedent. In *Nordquist v. McGraw-Hill Broadcasting Co.*, 38 Cal. Rptr. 2d 221, 224–25 (Ct. App. 1995), for instance, the California Court of Appeal held that an employee's exempt or non-exempt status is a "factual issue" that requires courts to engage in an analysis into the specific work that an employee performed. In order to determine whether plaintiff in *Nordquist* fell within the professional exemption, the California Court of Appeal reviewed testimony from plaintiff and other parties on what sort of work plaintiff actually performed. After examining this evidence, the *Nordquist* court noted that "the majority of [plaintiff's] job responsibilities were . . . mundane and routine." *Id.* at 232. As a television broadcaster, the plaintiff was "directed to simply report the facts and was precluded from providing commentary on stories he reported." *Id.* Plaintiff's "job responsibilities were not primarily intellectual or creative," nor did they require plaintiff to routinely exercise discretion or independent judgment, two requirements for the professional exemption. *Id.* Consequently, the court held that plaintiff did not fall within the professional exemption.

Consistent with *Nordquist*, in *Perine v. ABF Freight Systems, Inc.*, 457 F. Supp. 2d 1004 (C.D. Cal. 2006), the district court examined plaintiff's hourly work schedule to find that plaintiff—as a truck dispatcher who coordinated pickups in the commercial freight business—performed work which involved "substantial discretion" regarding "matters of great importance to

8

the company." *Id.* at 1016. Consequently, the district court found that plaintiff was an administratively exempt employee. *Id.* at 1006–10. Of particular relevance to the instant case, defendant in *Perine* "point[ed] to the fact that [p]laintiff's resume describe[d] his position with [defendant] as a 'City Dispatch Supervisor.'" *Id.* at 1012. The use of the title "Supervisor," defendant argued, was evidence of plaintiff's exempt status. Moreover, plaintiff in *Perine* was a member of a union which maintained a collective bargaining agreement with plaintiff's employer. This collective bargaining agreement included information on job titles, job procedures, and workplace discipline.

The *Perine* court rejected defendant's arguments and ignored the collective bargaining agreement in reaching its decision. As the district court explained, "whether an employee is exempt or non-exempt is an issue of fact, and the employee's job title is unimportant." *Id.* What matters, instead, is whether the employee spends "more than one-half of the employee's work time" on non-exempt "duties"—a determination that requires the court to take a "careful" look at "the facts of [the] case." *Id.*; *see also Khan v. K2 Pure Solutions, L.P.*, 2013 WL 6503345, *5–*6 (N.D. Cal. Dec. 4, 2013) (rejecting claim that an examination of an employee's formal job duties, without an analysis of the employee's actual responsibilities and what employee actually did, is sufficient to determine exempt or non-exempt status).

Finally, in an analogous context, the Ninth Circuit has held, with respect to the "outside salesperson" exemption that, "[u]nder California law, a court evaluating the applicability of the outside salesperson exemption must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 945 (9th Cir. 2009); *Williamson v. Cook Composites and Polymers Co.*, 2009 WL 4730887, *8 (C.D. Cal. Dec. 7, 2009) (applying standards for outside salesperson exemption to executive, administrative, and professional exemption). Specifically, a court must "examine[] in an individualized fashion the work actually performed by the employee to determine how much of that work is exempt." 571 F.3d at 945; *accord Duran v. U.S. Bank Nat'l Ass'n*, 325 P.3d 916, 929 (Cal. 2014) (stating that whether "outside salesperson" exemption

1  applies depends, on "how the employee *actually* spends his or her time.").

2  These cases provide an answer to the issue at the heart of this action. In order to determine
3  whether Plaintiff was mischaracterized as an exempt employee, a court must conduct a detailed
4  examination into Plaintiff's actual job responsibilities and whether these responsibilities fell
5  within or outside the purview of the administrative or professional exemptions. This sort of
6  examination does not require an interpretation of the collective bargaining agreement between
7  CWA and Defendant. Instead, Plaintiff's causes of action rise and fall based on how Plaintiff
8  "*actually* spen[t] . . . her time" while working for Defendant and on the legal definition of exempt
9  and non-exempt work, which is set forth in the California Labor Code and the Industrial Welfare
10 Commission's welfare order. *Id.*

11 Defendant's arguments to the contrary are unavailing. First, Defendant points to various
12 provisions in the collective bargaining agreement between CWA and Defendant. These
13 provisions, Defendant argues, show that CWA and Defendant intended to classify union
14 organizers like Plaintiff as exempt employees.

15 For example, Article 33 of the collective bargaining agreement states that CWA and
16 Defendant "recognize the professional nature of the job and that it will require work in excess of
17 the normal forty (40) hour work week. Therefore, all FLSA Exempt CWA employees working
18 full time shall receive one (1) day per month compensatory time off." ECF No. 1-4 ("CBA") at
19 23. Next, Appendices A and C provide details on the classification of various CWA employees.
20 Appendix A lists fifteen job positions, which includes union organizer positions. Of these fifteen
21 positions, Appendix C singles out the "Contract Enforcement Specialist Assessment" position and
22 states that those working in this position will work 40 hours per week and be paid overtime. *Id.* at
23 32–33. The collective bargaining agreement does not state whether any of the other fourteen
24 positions, including the union organizer positions, are eligible for overtime. The absence of any
25 such provisions, Defendant argues, demonstrates that union organizers were intended to be exempt
26 employees. Finally, Defendant points to other provisions that show that CWA and Defendant
27 intended to bargain over hours, salary, and work assignments. *See, e.g.*, MTR Opp'n at 4–5.

28

United States District Court
Northern District of California

The foregoing provisions are not relevant to determining whether Plaintiff actually performed primarily exempt or non-exempt work. Indeed, the collective bargaining agreement does not even describe Plaintiff's specific or expected job responsibilities. At best, these provisions demonstrate only Defendant's intent to classify Plaintiff as an exempt employee.

But mere intent is not enough to trigger § 301 preemption. As the California Supreme Court has noted, with respect to the outside salesperson exemption, if an employee's exempt or non-exempt status "were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that ha[s] little basis in reality." *Ramirez v. Yosemite Water Co., Inc.*, 978 P.2d 2, 13 (Cal. 1999). Thus, under Ninth Circuit precedent, the court may "not simply review the employer's job description" in order to evaluate whether an employee is eligible for a particular exemption. *Vinole*, 571 F.3d at 945; *accord Perine*, 457 F. Supp. 2d at 1112 ("[W]hether an employee is exempt or non-exempt is an issue of fact, and the employee's job title is unimportant."). Consistent with this authority, Defendant can not rely upon Defendant's intent to classify union organizers as exempt employees as a basis for § 301 preemption.

Defendant also cites *Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000); *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093 (N.D. Cal. 2014); and *Elswick v. Daniels Electric Inc.*, 787 F. Supp. 2d 443 (S.D. W.Va.2011), but these cases do not compel a contrary finding. In both *Firestone* and *Coria*, the parties agreed that plaintiffs were non-exempt employees eligible for overtime pay. *See* 219 F.3d at 1065–66; 63 F. Supp. 3d at 1099. The dispute in these cases was instead over *how* overtime would be calculated.

The *Firestone* court, for instance, examined whether a mathematical formula for determining overtime pay, which was part of the collective bargaining agreement, complied with the California Labor Code. The *Coria* court, on the other hand, examined whether the "Coffee Break" provision in the collective bargaining agreement should be read to exclude time spent on coffee breaks when determining overtime pay. Thus, both the *Firestone* and *Coria* courts needed to interpret the meaning, scope, and breadth of particular collective bargaining provisions in order

11

to address the merits of plaintiffs' claims. There are no such mathematical formulas or coffee break provisions in the instant case. As stated above, there is no need for the Court to review Plaintiff's collective bargaining agreement in order to determine whether Plaintiff should have been considered a non-exempt or exempt employee. Plaintiff's status as an exempt or non-exempt employee instead turns upon application of the California Labor Code and in the Industrial Welfare Commission's wage order.

Finally, in *Elswick*, plaintiff argued that he was improperly classified as a "laborer" when in fact he performed duties more consistent with that of a "lineman." 787 F. Supp. 2d at 445. The collective bargaining agreement included information on the job duties and compensation for laborers and linemen. *Id.* at 445. However, as the *Elswick* court pointed out, a central provision in the collective bargaining agreement states that workers may be "temporarily assigned to other jobs out of the employee's classification." *Id.* at 447 (internal quotation marks omitted). Thus, in order to determine whether plaintiff should have been classified as a lineman, a court would have needed to interpret the collective bargaining agreement in order to determine whether plaintiff's work fell within this temporary-assignment exception. *Id.* at 448. There is no such temporary-assignment exception here.

In sum, *Firestone*, *Coria*, and *Elswick* are inapposite. In these cases, there was no dispute over whether the individual plaintiffs were correctly characterized as exempt or non-exempt employees—all parties agreed that the employees at issue performed primarily non-exempt work. More importantly, these cases required the court to interpret specific terms in various collective bargaining agreements. The mathematical formula in *Firestone*, the Coffee Break provision in *Coria*, and the temporary-assignment exception in *Elswick* were all located in the collective bargaining agreement. It would not have been possible to adjudicate the legal and factual issues presented in *Firestone*, *Coria*, and *Elswick* without reading and interpreting the collective bargaining agreement.

On the other hand, in the instant case, whether Plaintiff was properly considered an exempt or non-exempt employee does not require a court to interpret the collective bargaining agreement.

12

Case No. 16-CV-02547-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS

As noted above, the definition on an exempt employee is found not in the collective bargaining agreement, but in the California Labor Code and the Industrial Welfare Commission's wage order. Thus, in order to determine whether Plaintiff has a meritorious claim, a court would need to determine how many hours Plaintiff worked and what sort of work Plaintiff performed. The court would then have to determine, by examining the California Labor Code and the Industrial Wage Commission's wage order, whether Plaintiff performed work which was primarily exempt or non-exempt in nature. Neither of these two steps—examining how Plaintiff actually spent her time and applying the standards set forth in the California Labor Code and the Industrial Wage Commission's wage order—require an interpretation of the collective bargaining agreement. Accordingly, unlike *Firestone*, *Coria*, and *Elswick*, Plaintiff's claims do not substantially depend on the terms of the collective bargaining agreement.

### c. Grievance and Arbitration Procedure

As a final point, Defendant notes that the collective bargaining agreement contains an internal grievance and arbitration procedure to settle disputes. In particular, Article 25 defines a grievance as "any complaint, misunderstanding or difference by the Union or one or more employees which involves the meaning, application or interpretation of the provisions of this Agreement, including discipline, discharge, or the SEIU Local 521 Personnel Rules or Policies." CBA at 18. Article 25 and Article 26 then provide procedures on how grievances may be filed, how they will be handled, and how unresolved grievances may proceed to arbitration. *Id.* at 19. In Article 33, the collective bargaining agreement states that CWA and Defendant "agree to comply with all applicable federal, state and local laws and regulations, including, but not limited to, provisions of the California Labor Code, Industrial Welfare Commission's Orders and Fair Labor Standards Act. [CWA and Defendant also] agree to resolve any wage and hour claims concerning wages and hours of work arising from this Agreement and these other federal, state and local laws through the grievance and arbitration procedure." *Id.* at 24.

According to Defendant, these terms mean that Plaintiff's suit in federal court is improper, and that Plaintiff must instead go through the collective bargaining agreement's grievance and

arbitration procedure.  The arbitrator, according to Defendant, determines the scope and reach of the grievance and arbitration procedures.  MTR at 5.  Moreover, to the extent that the parties dispute the reach of these grievance and arbitration provisions, Defendant argues that such a dispute also requires interpretation of the collective bargaining agreement and thus confers upon this suit federal jurisdiction under § 301.

These latter arguments have already been considered and rejected by the Ninth Circuit.  As the Ninth Circuit has observed, "[w]here a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the [collective bargaining agreement] must include 'clear and unmistakable' language waiving the covered employees' state right for a court even to consider whether it could be given effect."  *Cramer*, 255 F.3d at 692 (internal quotation marks omitted).  "Thus, a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption."  *Id.*  A party can not—as Defendant has tried to do—simply "inject a federal question into an action" by creating a dispute about the scope of a grievance and arbitration provision.  *Id.* at 694 (alteration omitted).  The district court must instead independently evaluate the scope of such provisions to determine whether they represent a "clear and unmistakable" waiver of a state right.

Applying the "clear and unmistakable" standard to the instant case, this Court finds that the collective bargaining agreement does not demonstrate a "clear and unmistakable" waiver of Plaintiff's right to bring suit in federal court.  As noted above, Articles 25 and 26 in the collective bargaining agreement defines a grievance as "any complaint, misunderstanding or difference by [CWA] or one or more employees which involves the meaning, application or interpretation of the provisions of this Agreement."  CBA at 18.  However, Plaintiff's causes of action do not involve the "meaning, application or interpretation" of the collective bargaining agreement.  Whether Plaintiff should have been treated as a non-exempt employee instead requires an analysis of the hours Plaintiff worked and the actual work Plaintiff performed.  Accordingly, Plaintiff's complaint does not constitute a "grievance" as defined by the collective bargaining agreement.

Next, Defendant's reliance upon Article 33 is equally unavailing.  Article 33 states that

14

CWA and Defendant (1) "agree to comply with all applicable federal, state and local laws and regulations, including, but not limited to, provisions of the California Labor Code, Industrial Welfare Commission's Orders and Fair Labor Standards Act," and (2) "agree to resolve any wage and hour claims concerning wages and hours of work arising from this Agreement and these other federal, state and local laws through the grievance and arbitration procedure." CBA at 24.

These sorts of provisions, which attempt to provide a blanket waiver to all federal and state causes of action, have been routinely rejected by both the U.S. Supreme Court and Ninth Circuit. In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 81 (1998), for example, the U.S. Supreme Court rejected the argument that an employee had clearly and unmistakably waived his judicial rights where the relevant collective bargaining agreement contained a waiver provision stating that "this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment."

In interpreting *Wright*, the Ninth Circuit has held that "[w]e will not interpret a [collective bargaining agreement] to waive an individual employee's right to litigate statutory . . . claims unless the [collective bargaining agreement] waiver explicitly incorporates [the] statutory . . . requirements." *Powell v. Anheuser-Busch Inc.*, 457 F. App'x 679, 679 (9th Cir. 2011) (alterations omitted); *see also Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 964 (C.D. Cal. 2014) (holding that, if "a [collective bargaining agreement's] grievance and arbitration procedure do[] not directly reference the statutes at issue," then the agreement "does not contain a 'clear and unmistakable waiver' of an employee's right to a judicial forum"); *Martinez v. J. Fletcher Creamer & Son, Inc.*, 2010 WL 3359372, *3 (C.D. Cal. Aug. 13, 2010) (finding that "a collective bargaining agreement that does not mention any of the statutes at issue" does not "constitute a 'clear and unmistakable' waiver of an employee's right to sue in a judicial forum").

Thus, in *Powell*, the Ninth Circuit concluded that the collective bargaining agreement did not "explicitly incorporate [plaintiff's] disability discrimination claims under the California Fair Employment and Housing Act ('FEHA')." *Powell*, 457 F. App'x at 679. Although the collective bargaining agreement in *Powell* did "recognize[]" defendant's "duty to comply with FEHA," the

15

Ninth Circuit determined that this passing mention of FEHA in the collective bargaining agreement did not constitute a "clear and unmistakable" waiver.

As in *Powell*, the waiver provisions at issue here make only a single passing mention to various state and federal laws. Specifically, CWA and Defendant "agree to comply with all applicable federal, state and local laws and regulations, *including, but not limited to*, provisions of the California Labor Code, Industrial Welfare Commission's Orders and Fair Labor Standards Act. [CWA and Defendant] agree to resolve any wage and hour claims concerning wages and hours of work arising from . . . these other federal, state and local laws through the grievance and arbitration procedure." CBA at 24 (emphasis added). Following *Powell*, the Court finds that this passing reference to the California Labor Code, the Individual Welfare Commission, and the Fair Labor Standards Act is insufficient to confer federal jurisdiction in the instant case.

In response to this line of authority, Defendant cites *Williams v. Brinderson Constructors Inc.*, 2015 WL 4747892 (C.D. Cal. Aug. 11, 2015), and *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). Both of these cases, however, are inapposite.

As an initial point, the *Williams* court made clear that its discussion of the collective bargaining agreement's waiver provisions was dicta. The court had already "determine[d] that California employment law . . . d[id] not apply to" defendant because of the impact of certain provisions under the federal Outer Continental Shelf Lands Act. *Id.* at *7. Nevertheless, the *Williams* court decided to "outline what its ruling would have been for all claims" for purposes of "appeal[]." *Id.* The *Williams* court then went on to reject defendants' attempt to enforce the arbitration waiver as to *all* causes of action. Instead, the court noted that the waiver provision in *Williams* referred specifically to Wage Order 16. *Id.* at *8. Thus, causes of action related to Wage Order 16 would have been waived. *Id.* However, waiver would not have applied to causes of action which did not relate to Wage Order 16. Unlike *Williams*, the collective bargaining agreement in the instant case does not refer to Wage Order 16 or any other specific statutory or regulation provisions. Similarly, in *14 Penn Plaza*, the U.S. Supreme Court declined to address whether "the particular CBA at issue . . . clearly and unmistakably require[s] [respondents] to

arbitrate their [antidiscrimination] claims." 556 U.S. at 272. As the U.S. Supreme Court noted, "respondents did not raise these contract-based arguments in the District Court or the Court of Appeals." *Id.* As a result, these arguments had "been forfeited." *Id.* at 273.

In sum, neither *Williams* nor *14 Penn Plaza* applies here. Instead, following *Wright* and *Powell*, the Court finds that Plaintiff has not waived her right to a judicial forum.

### B. Attorney's Fees and Costs

Plaintiff has also requested attorney's fees and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case [from federal to state court] may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In interpreting this provision, the U.S. Supreme Court has held that, "[a]bsent unusual circumstances, courts may award attorney's fees . . . only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Removal is not objectively unreasonable solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, the court should assess "whether the relevant case law clearly foreclosed the defendant's basis of removal." *Id.* at 1066 (internal quotation marks omitted).

Under this standard, Defendant's actions were not objectively unreasonable. As the Ninth Circuit has observed, "[t]he demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision." *Cramer*, 255 F.3d at 691. Here, especially, there were only a handful of cases which addressed the legal issues presented. There was no case law that clearly foreclosed Defendant's basis of removal. Plaintiff's request for attorney's fees and costs is therefore DENIED.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED, and Defendant's motion to dismiss is DENIED. Plaintiff's request for attorney's fees and costs is DENIED. The Clerk shall transfer the case file to the Santa Clara County Superior Court.

17
Case No. 16-CV-02547-LHK
ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS

**IT IS SO ORDERED.**

Dated: August 14, 2016

_____
LUCY H. KOH
United States District Judge